MATTER OF PAUL

In DEPORTATION Proceedings

A-5142538

*Decided by Board May 14, 1963*

Since respondent was represented during the deportation hearing by counsel
who had notice of the existence of pre-hearing statements made by a Govern-
ment witness but did not request that the statements be made available, he
is not subsequently entitled to the production of the statements.

CHARGE:

Order: Act of 1952—Section 241(a)(6) [8 U.S.C. 1251(a)(6)]—After entry,
an alien who was a member of the Communist Party of the United
States.

Before us are an appeal from the order of the special inquiry officer
requiring respondent's deportation upon the ground stated above and
a motion for the production of documents. The appeal will be dis-
missed and the motion denied.

On February 4, 1963, the special inquiry officer ordered respondent's
deportation upon the charge stated above. The special inquiry officer
found the charge sustained on the basis of the testimony of Service
witness Fikes. The attorney of record became ill; notice of appeal
was filed by a new attorney who thereafter handled the case. In the
notice of appeal deportability was contested on the ground that the
evidence did not support an order of deportation.

A day after the appeal was filed, counsel filed a motion asking that
the appeal be held in abeyance and that she be furnished with copies
of all statements made by Government witness Fikes to any agency of
the Federal Government. The motion was forwarded to the special
inquiry officer who informed counsel that the record contained no
copies of statements made by Fikes and that the motion was belated
since the proceedings before him had been completed. This motion
is now before us.

Respondent, a 66-year-old married male, a native and last a citizen
of Russia, has resided in the United States since his admission for
permanent residence in 1922. The order of deportation is based on the

finding that respondent had been a member of the Communist Party after his entry. Counsel raises four main issues; laches, lack of credibility, meaningfulness of membership, and nonaccess to documents.

The special inquiry officer has dealt in great detail with the facts of record and we shall state no more than is required to understand the contentions of counsel.

Deportation hearings required three sessions. At the first (April 13, 1959) counsel conceded the accuracy of all findings of fact contained in the order to show cause except the one which charged the respondent with having been a member of the Communist Party after entry. The respondent refused to be sworn and testify at this session or at those which followed.

At the second session (May 19, 1959) the Service produced Abraham Zide who testified he had attended Communist Party meetings with respondent from the end of 1946 to about August 1948. At the conclusion of his examination, the Service asked for an adjournment to arrange for the appearance of another witness. Counsel objected; when he was overruled he stated that in view of the courtesies which had been extended to him by the examining officer he would have no objection to the case going over sine die.

At the third session (November 1, 1962) counsel moved for termination of proceedings on the ground the Government was guilty of laches. The motion was overruled. (We believe the special inquiry officer has adequately discussed this issue.) The testimony of Government witness Fikes was taken at this session.

Fikes testified that he had joined the Communist Party in Birmingham, Alabama, in 1949, that in late 1949 or early 1950, he had gone to New York where a Communist Party representative arranged that he stay with the respondent, that he stayed about four weeks, that during the stay he attended four or five Communist Party meetings held at the respondent's apartment, that respondent presided at the meetings, that respondent paid Communist Party dues, and that in discussions with the witness, respondent admitted that he was a member of the Communist Party.

Fikes testified that the Stockholm Peace Petition had been one of the subjects of discussion at the meetings, that on two or three occasions between 1953 and 1958, he stayed at the respondent's home in New York, that he last saw respondent in 1957 when he received a donation for the Communist Party from him, and when in the respondent's presence and in respondent's apartment, and after the respondent had helped arrange the meeting, the witness met on Communist Party matters with Communist Party officials, Silvia Hall and Jim Jackson (pp. 77-75, 97-98, 104).

269

Fikes admitted, that in completing a United States Army form which asked for information concerning Communist Party membership, he had lied about membership in the Communist Party (p. 79). He testified that he had been a witness before the grand jury in a case involving the Mine, Mill and Smelter Workers Union. He stated on cross-examination that from 1953 to 1958 he had made weekly reports, some oral and some in writing on Communist Party matters to the Federal Bureau of Investigation and that some of the reports mentioned respondent (pp. 83–85). At the hearing, counsel did not request production of these reports, nor did counsel ask for a continuation of the hearing to enable him to determine whether material existed which would be of use in cross-examining Fikes.

It is contended that Fikes' testimony is lacking in probity and reasonableness. Counsel contends that Fikes' testimony that he attended Communist Party meetings at respondent's home strains credulity because the Party's concern with membership exposure would have made it unlikely that a nonmember of a Communist Party would have been invited to attend Communist Party meetings. We find no merit in this contention. There is no evidence in the record that a Communist Party member who had moved from the area where his unit was located and who presumably would be away from that area for some time would not have been permitted to attend meetings of other Communist Party units. On the contrary, it appears to us most likely that arrangements would have been made to continue Fikes under the direction and discipline of the Communist Party by requiring him to attend a unit in the place where he found himself.

Counsel contends that meetings at respondent's home were meetings of members of a furniture workers union who were interested in union problems. Fikes was a knowledgeable member of the Communist Party: he had attended a Communist Party school, he had collected Communist Party dues, he had been the chairman of the Communist Party unit to which he had belonged in Birmingham, Alabama, he was the liaison man between the Communist Party and the Mine, Mill and Smelter Workers Union unit there, he was a member of the Southern Regional Section of the Communist Party and was sent by the Communist Party of Alabama to New York to represent them at meetings. Fikes testified that the meetings were Communist Party meetings composed of persons who were furniture workers; that Communist Party literature was distributed; that Communist Party dues were collected; that meetings would be stopped at the prospect of a person not a member of the Party coming to the apartment (p. 60); and that the respondent had told him that he was attempting to recruit furniture workers for the Communist Party (p. 65). The witness knew that there was a rank and file committee of furniture workers union

(p. 99) ; he knew that the meetings he attended at respondent's home were not meetings of the rank and file committee (p. 100) ; and he identified the meeting as Communist Party meetings, although he was aware that at the meetings there was discussion of problems confronting the furniture workers union (pp. 103, 104).

Counsel contends that Fikes' description of what occurred at the Communist Party meetings he attended is so lacking in details that what is described is nothing but the general procedure at any Communist Party club meetings, and could be used by Fikes to place himself at any Communist Party meeting he desired to testify about. The contention is without merit. Fikes testified in 1962 about meetings which had occurred some 12 years previously. He knew they were Communist Party meetings; he placed the respondent at these meetings; he stated that the respondent's wife would check on persons coming to determine if they were communists and eligible to attend the meeting. Neither of the persons specifically mentioned contradicted this testimony. It is understandable that the specific details of matters handled at these meetings cannot be given at this date. The special inquiry officer who had the opportunity to observe Fikes testify, found him credible. After careful review of the record we find the witness credible, and accept his account of attendance at Communist Party meetings with the respondent.

Fikes testified that one of the items considered at the Communist Party meetings in respondent's apartment was the Stockholm Peace Petition. Counsel drawing upon matter not in the record contends that the petition could not have been discussed at these meetings which Fikes stated occurred in late 1949 or early 1950 because the Stockholm Peace Appeal was first passed in March 1950 and circularization of petitions started at the end of May or beginning of June 1950. Counsel has not asked for a reopening of proceedings to cross-examine the witness on the basis of this information. For the sake of argument we shall assume that the facts alleged by counsel concerning the petition could be established at the hearing. Since the witness revealed his uncertainty about the exact period of time that he lived with the respondent, placing it as late 1949 or early 1950, it is not significant that he could have been in error a month or two concerning the period he spent with the respondent. In any event, discussions which may have taken place in April to June 1950 could well fall within Fikes' testimony that the meetings could have taken place in early 1950. In view of this fact and noting that counsel does not request reopening of proceedings to cross-examine Fikes on this matter and give him a chance to explain the conflict if any, we do not believe that Fikes' credibility is lessened.

271

Counsel contends that the respondent, a person of mature years, would not have divulged Communist Party membership to Fikes, then a youth. There would appear to be no reason for concealing the fact of membership if Fikes was considered a proper person to invite to the Communist Party meetings in respondent's home.

Counsel takes issue with Fikes' designation of a social affair as a closed one on the ground the record clearly establishes that admission was open to anyone who paid the admission price. Fikes' testimony is that the dance was open only to individuals who were members of the Party, even though tickets were sold (pp. 66–67, 94–96). We do not find it clearly established the meeting was open to the general public. Fikes denied that it was so open.

Counsel contends the Service has failed to carry its burden of proof that respondent was a member of the Communist Party and that membership was meaningful. We believe that the fact of membership is established by the testimony of Fikes. As to meaningfulness, Fikes' testimony—that the respondent acted as chairman at meetings, that unwanted people would have been prevented from attending, that he attempted to recruit people for the Communist Party (p. 65) and that the respondent with his wife attended a special meeting at which Fikes made a report on activities of the Party for the South, and that respondent was active in arranging the meeting (p. 74)—reveals more than a nominal membership. The appeal will be dismissed.

Counsel requests that if the appeal is not sustained, that his motion be granted. The motion is not for reopening of proceedings but that respondent be furnished with copies of statements, memoranda and reports made by Fikes to the Service and other Federal agencies relating to the respondent. In particular all reports relating to the respondent's whereabouts in 1949, 1950 and 1957 are requested. At oral argument, counsel stated that she would be satisfied if the information was made available to the special inquiry officer presumably for disposition in the spirit of 18 U.S.C. 3500.

The request for reports relating to the whereabouts of Fikes is occasioned by the fact that Fikes testified, at the deportation hearing, that late in 1949 or early 1950 (pp. 52, 57, 67, 102) he spent four weeks with the respondent in New York, and that this testimony is in conflict with testimony counsel now presents which shows that at a trial in November 1959 in Denver, Fikes testified that from about the summer or fall of 1949 until about the fall of 1950 he had been a member of the Communist Party club in Birmingham, Alabama, and had apparently spent his time in Birmingham during this period. Counsel also cites from the report of an FBI agent on the same trial that Fikes had informed him that he came to Birmingham in 1950 and joined the Communist Party there and counsel contrasts this with Fikes' testi-

mony at the deportation hearing that he came to New York City in late 1949 or early 1950 and remained until January 1951 at which time he returned to Birmingham and entered the United States Army.

Counsel has not requested the right to cross-examine the witness on either of these matters. On this record we do not find that a conflict of a serious nature exists. At the deportation hearing, Fikes testified that he remained in Birmingham, Alabama, to late 1949 or early 1950; the transcript of trial testimony merely reveals that it was around the fall of 1950 that he had left Birmingham rather than early 1950 as his deportation testimony indicates it could have been. But it is not clear from the trial testimony that Fikes actually left Birmingham late in 1950; the trial testimony reveals that Fikes was uncertain as to the time he left Birmingham, indicating that it was "sometime in 1950" and that the best he could recall was that it had happened in the fall. As to the report of the FBI agent that Fikes stated he joined the Communist Party in 1950 in Birmingham we do not see how Fikes can be held responsible for the agent's testimony. The FBI report is in conflict with Fikes' own testimony at the trial that he had joined the Communist Party in Birmingham in the summer or fall of 1949 and if the quotation furnished by counsel is accurate, it shows the respondent as having attended a Communist Party school in New York in 1947 (the respondent attended in 1949).

The request for production of reports made by Fikes concerning the respondent must be denied. As the Service representative has pointed out, counsel who represented the respondent at the hearing had notice of the existence of the report (pp. 83–84) but did not request that "statements" be made available. Respondent is, therefore, not entitled to the production of the statements. *Ogden* v. *United States*, 303 F. 2d 724, 733, 9th Cir., and cases cited in footnote 27.

ORDER: It is ordered that the appeal be and the same is hereby dismissed.

*It is further ordered* that the motion for production of documents be and the same is hereby denied.

768–456—65——19